**MATHIS BROTHERS CO. AND NEW YORK BLOWER CO., PETITIONERS,
*v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.**

Docket No. 3861.   Promulgated November 25, 1927.

*Herman A. Fischer*, *Esq.*, and *Jacob Auer*, *C. P. A.*, for the petitioners.

*J. Harry Byrne*, *Esq.*, and *Willis D. Nance*, *Esq.*, for the respondent.

OPINION.

MURDOCK: At the outset it should be stated that consideration of this case has been extremely difficult, because of the manner in which it has been presented to us. The petition does not contain, as the rules of the Board require, clear and concise assignments of error, nor a clear and concise statement of the facts upon which the petitioners rely as sustaining the assignments of error. Only after a very diligent study of the record as a whole have we been able to determine with any degree of certainty what the issues are which we are asked to decide. Considerable and fairly satisfactory evidence has been submitted by the petitioners of the nature of the respondent's various and sundry adjustments of net income and invested capital; but, generally speaking, the evidence of the facts upon which the petitioners rely to overcome the *prima facie* correctness of those adjustments is vague, indefinite, and unsatisfactory..

The first issue is that the Commissioner has overstated net income for 1919 by $33,967.31. No facts are set out in the petition in support of the assignment of error. At the hearing the petitioners presented evidence that items of expense were erroneously charged on the books of account to capital asset accounts, and of the circumstances surrounding the writing off of patents, in the amount of $2,026.80, which was not allowed as a deduction for the purpose of the tax. Statements of witnesses and of counsel for the petitioners at the hearing vaguely indicated that the total of expense items which were charged to capital asset accounts, and which should have been charged against income, amounted to approximately $1,936; but the evidence goes no further than to establish that fire insurance of $184.34, watchman's wages of $45, and purchases of zinc for use in the plant of one of the petitioners, in the amount of $350, were erroneously recorded on the books. The Commissioner's determination of net income is based upon the book accounts; and since he failed to make proper adjustments for expense items erroneously recorded therein, the net income shown in the deficiency notice is overstated $579.34.

As to the charge against income of $2,026.80, representing the writing off of two patents, which was not allowed as a deduction, the evidence shows that one of these patents became obsolete and its use was discontinued in 1917, while a like fate befell the other one in 1918. The obsoleteness and discontinuance of the use of the one patent in 1917 occurred in a taxable year prior to that which we have under consideration, and clearly the loss incidental thereto is not a proper deduction from income of the latter year. On the other hand, since the year which we have under consideration began on August 1, 1918, the loss and discontinuance of the use of the other patent in 1918 may or may not constitute a proper deduction from the income of the year under consideration, depending on whether obsoleteness and discontinuance occurred after July 31, 1918, or before August 1, 1918. The evidence merely shows that obsoleteness and discontinuance occurred in 1918, and does not show the relation of the date of those happenings to the taxable year under consideration. Furthermore, there is no evidence as to what proportion of the amount written off applies to each patent; and had it been possible to find that obsoleteness and discontinuance of the use of the one patent in 1918 occurred within the year under consideration we would still have been unable to find the amount of the loss which the petitioners would be entitled to deduct. Under the circumstances we may not disturb the Commissioner's action in disallowing the deduction in question.

The second issue is that invested capital has been reduced erroneously because of alleged inadequate depreciation charged off in prior years. On examination of the evidence we find that on August 1, 1918, the beginning of the taxable year under consideration, the petitioners carried on their books of account depreciable assets of $42,694.82, and depreciation reserves, applicable to those assets, in the total sum of $18,294.16. The net book value of the petitioners' depreciable assets was, therefore, $24,400.66. The revenue agent who examined the petitioners' books for the year under consideration, by computing depreciation for each year from date of organization to the beginning of the taxable year according to the straight line theory and at the rate of 15 per cent per annum, determined that the accrued depreciation was sufficient to wipe out all but $1,200 of the book value of the petitioners' depreciable assets, and, accordingly, he reduced earned surplus and invested capital by $23,200.66. In the deficiency notice the sum of $34,731.96 was restored to invested capital, so that with the $1,200 included by the revenue agent, the depreciable assets were included therein at a gross value of $35,931.96, but the Commissioner then proceeded to reduce invested capital by accrued depreciation of $33,195.50, so that the depreciable assets were

included at a net value of $2,736.46, which is $21,664.20 less than their net book value.

Adding the depreciation of $10,009.46, which was credited to the asset accounts on the books of the Mathis Brothers Co., to the book value of $42,694.82, it is readily apparent that the cost of the depreciable assets was at least $52,704.28; and these same assets are included in invested capital, by the Commisisoner, at a net value of $2,736.46, which is but a mere 5 per cent, approximately, of their cost. It would appear that if the depreciable assets served any useful purpose at all in the petitioners' businesses, their depreciated value would exceed a paltry 5 per cent of cost, which would appear to be hardly more than their salvage value; and the circumstances in this respect should not be difficult of proof. Yet, the record is entirely void of evidence which would support a finding that the Commissioner erred in his adjustment of invested capital. The only evidence we have is the testimony of the treasurer of the petitioner companies, who testified that in his opinion proper rates of depreciation are 4 per cent for furniture and fixtures and 5 per cent for machinery and equipment; and that an appraisal made in 1913 by an employee showed a then replacement value for the depreciable assets of the Mathis Brothers Co. and the New York Blower Co. of approximately $118,000 and $30,000, respectively. The appraisal, or inventory, was not placed in evidence, the witness explaining that he thought it had been destroyed. We know that the petitioner charged off certain amounts in prior years for depreciation, but we do not have any proof that the amounts charged off even approximated the depreciation actually sustained. We have no idea of what depreciation was sustained and we have no other alternative than to sustain the Commissioner in reducing invested capital by $21,664.20 for inadequate depreciation charged off in prior years.

The third and fourth issues are related and are considered together. At the beginning of the taxable year, Mathis Brothers Co. carried on its books a treasury stock account in the amount of $29,316.26, and an account receivable due from C. W. Rogers, its secretary, in the amount of $7,086.76. The revenue agent eliminated both of these assets from invested capital on the ground that they represented purchases by Mathis Brothers Co. of its own capital stock. Of the total amount eliminated by the agent, $36,403.02, the deficiency notice restored the sum of $17,136.70. Both of these asset accounts represented bona fide accounts receivable, for loans made by Mathis Brothers Co. to its executive officers, to permit those officials to purchase shares of stock of Mathis Brothers Co. from other stockholders, for their own account, and they have been paid in full. The Commissioner erred in failing to include both asset accounts in

full in invested capital; and the invested capital shown in the deficiency notice should be increased by the difference of $19,266.32.

The fifth issue is that the Commissioner erroneously reduced invested capital by $1,000, because of alleged appreciation in the book value of the land and buildings of the New York Blower Co. The sixth issue is that he erroneously increased invested capital by $15,768.50, because of an adjustment of the inventory of July 31, 1917. The seventh issue is that he erroneously increased invested capital by $1,600, because of understatement of the income of a preceding year through charging purchases of additional machinery to expense. No evidence was offered of the facts upon which the petitioners rely as sustaining any one of these assignments of error; and we may not disturb the Commissioner's action.

The eighth issue is that invested capital has been reduced on account of income and profits taxes of prior years erroneously computed. There is no evidence that the taxes for prior years have been erroneously computed; and, except for the fiscal year ended July 31, 1918, we have not the remotest idea as to how those taxes were computed. As to the fiscal year 1918, we have been unable to find any error by the Commissioner in the computation of the tax liability.

The ninth issue is that invested capital has been reduced erroneously by $9,000, on the ground that the New York Blower Co. had included in income of a prior year, and, therefore, in earned surplus, the proceeds from the sale of certain properties which were sold at cost. The evidence shows that the New York Blower Co. sold certain of its properties in a prior year to the American Clay Co., and that the proceeds of the sale, in the amount of $9,000, were credited to the property accounts and were not included in income and are not, therefore, included in the book surplus at the beginning of the taxable year. The Commissioner's action is erroneous and is reversed.

The tenth and last issue is that the Commissioner erred in failing to include in invested capital the cost of additions to plant and equipment, totaling $128,065, charged to expense in prior years and disallowed as deductions, in income-tax returns, by the Commissioner. The evidence is not sufficient to support this assignment of error. It consists only of the testimony of the petitioners' treasurer that additional taxes were assessed for prior years, the reason for which was explained to him by the revenue agent who examined the books for those years as the disallowance of deductions from income of capital expenditures; and that $55,000 was expended in 1913 for special machinery and equipment for producing mail boxes under a Government contract, all of which was charged to expense on the books. There is no evidence in the record that the assets, the cost of which

the petitioners ask to have restored to invested capital, were on hand and in use at the beginning of the taxable year; and though the petitioners' books of account were present at the hearings, no attempt was made to identify thereon costs of capital additions charged to expense in prior years. We are unable to find any error on the part of the Commissioner here.

> *Judgment will be entered on notice of 15 days, under Rule 50.*

Considered by MORRIS, SIEFKIN, and TRAMMELL.